626 S.E.2d 1

Willie May DAVID and J.D. David, Appellants,

v.

McLEOD REGIONAL MEDICAL CENTER, Dr. Ken Brusett, Individually, Pee Dee Cardiovascular Surgeons, Pee Dee Pathology, and Dr. H.K. Habermeier, Individually, Respondents.

No. 26020.

Supreme Court of South Carolina.

Heard Feb. 1, 2005.
Refiled Jan. 23, 2006.

244

Eduardo K. Curry and Carl B. Grant, both of Curry & Counts, of Charleston; and Jayne G. Helm, of Mt. Pleasant, for Appellants.

J. Rene Josey, of Turner Padget Graham & Laney, of Florence; Mark W. Buyck, Jr., of Wilcox Buyck & Williams, of Florence; and Robert H. Hood, D. Nathan Hughey, and Deborah H. Sheffield, all of Hood Law Firm, of Charleston, for Respondents.

Chief Justice TOAL.

Willie Mae David (Appellant), the plaintiff in the underlying medical malpractice action, appeals the trial court's decision granting the respondents' motions for summary judgment. This case was certified from the court of appeals pursuant to Rule 204(b), SCACR. We withdraw our original opinion in this matter and substitute it with this opinion affirming the trial court's decision.

## FACTUAL/PROCEDURAL BACKGROUND

Appellant underwent surgery after her family doctor found a lesion on Appellant's lower left lung. Specifically, Appellant underwent a "wedge biopsy," where a thoracic surgeon extracted a portion of the suspicious tissue and sent the tissue to a pathologist for diagnosis. The pathologist returned a preliminary diagnosis of "probable pulmonary blastoma," a rare form of cancer, which was confirmed by the pathologist's partner. Based on this diagnosis, the thoracic surgeon decided to remove the lower left portion of Appellant's lung while Appellant was still anesthetized and unconscious.

A final pathology report, issued three days after the surgery, concluded that the lesion was not cancerous, but rather, a "pulmonary endometrioma;" a rare form of endometriosis,

which, from a visual inspection, closely resembles pulmonary blastoma.[1]

Appellant filed the underlying action and named the following parties as defendants: (1) the hospital where the surgery took place (McLeod Regional), (2) the thoracic surgeon who performed the surgery (Dr. Brusett), (3) Dr. Brusett's practice group (Pee Dee Cardiovascular Surgeons), (4) the pathologist who provided the preliminary diagnosis (Dr. Habermeier), and (5) Dr. Habermeier's practice group (Pee Dee Pathology). Appellant claimed that she suffers from several ailments as a result of the surgery, including chest and back pain, shortness of breath, and anxiety.

Respondents filed separate motions for summary judgment.[2] McLeod Regional sought summary judgment on the grounds that any alleged malpractice was performed by independent contractors; therefore, the hospital could not be vicariously liable for Appellant's alleged injuries. The remaining Respondents sought summary judgment arguing that Appellant had failed to establish the essential elements of her case; specifically, that Appellant had failed to produce expert testimony establishing the applicable standard of care, breach of that standard, and a causal connection between the breach and Appellant's injuries. The trial court granted the Respondents' motions for summary judgment in three separate orders. Appellant now raises the following issues for review:

I. Did the trial court err in granting the respondent physicians' motions for summary judgment?

II. Did the trial court err in holding that McLeod Regional was not vicariously liable for Appellant's alleged damages?

---

**1.** The evidence in this case suggests that the tissue removed for diagnosis unfortunately proved difficult to analyze. The sample was so strange that after determining that the tissue was not cancerous, the pathologist sent the sample to the Department of Defense, who replied "[w]hile the endometroid glandular architecture would cause one to consider the possibility of pulmonary blastoma, the histology is completely compatible with a diagnosis of endometrioma ... [t]hank you for sending this interesting case."

**2.** Specifically, Respondents filed three motions for summary judgment: (1) McLeod Regional, (2) Dr. Brusett and Pee Dee Cardiovascular Surgeons, and (3) Dr. Habermeier and Pee Dee Pathology. The Respondents' briefs to this Court were submitted in this fashion as well.

LAW/ANALYSIS

## I. The Respondent Physicians' Motions for Summary Judgment

Appellant argues that the trial court erred in granting summary judgment in favor of the respondent physicians. We disagree.

 When reviewing an order granting summary judgment, the appellate court applies the same standard as the trial court. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Fleming,* 350 S.C. at 493–94, 567 S.E.2d at 860.

As the trial court recognized, the rules of civil procedure describe what an affidavit must contain in order to establish an issue of fact sufficient to defeat a motion for summary judgment. Rule 56(e), SCRCP provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein."

 A physician commits malpractice by not exercising that degree of skill and learning that is ordinarily possessed and exercised by members of the profession in good standing acting in the same or similar circumstances. *Durham v. Vinson,* 360 S.C. 639, 650–51, 602 S.E.2d 760, 766 (2004). Additionally, medical malpractice lawsuits have specific requirements that must be satisfied in order for a genuine factual issue to exist. Specifically, a plaintiff alleging medical malpractice must provide evidence showing (1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances, and (2) that the defendants departed from the recognized and generally accepted standards. *Pederson v. Gould,*

288 S.C. 141, 143–44, 341 S.E.2d 633, 634 (1986); *Cox v. Lund,* 286 S.C. 410, 414, 334 S.E.2d 116, 118 (1985). Also, the plaintiff must show that the defendants' departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages. *Green v. Lilliewood,* 272 S.C. 186, 193, 249 S.E.2d 910, 913 (1978). The plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants. *Pederson,* 288 S.C. at 143, 341 S.E.2d at 634. Therefore, in order to withstand a properly supported motion for summary judgment in a medical malpractice action, any affidavits presented to the court must first comply with the terms of Rule 56, SCRCP, and the evidence as a whole must meet the criteria laid out in *Pederson* and its progeny.

In the present case, Appellant relies solely on the affidavit of pathologist Dr. Brian Frist to create a genuine issue of material fact as to the commission of malpractice by the respondent physicians.[3] The trial court ruled that Dr. Frist's affidavit failed to establish that he is familiar with the standard of care from which the respondent physicians allegedly deviated. We agree and find that the affidavit is insufficient.

In his affidavit, Dr. Frist's sole opinion as to Dr. Brusett's alleged malpractice is that Dr. Brusett failed "to make sure that he communicated to the pathologist his thoughts for treatment, so that the pathologist was aware of the treatment plan of the surgeon." First, Dr. Frist incorrectly relies on the assumption that the pathologist would have diagnosed Appellant's tumor differently had Dr. Brusett "com-

---

3. Initially, Appellant named only one expert in her response to interrogatories: Dr. Hossein Tirgan, an oncologist in the state of New Jersey. Dr. Tirgan, by way of affidavit and deposition, opined that all Respondents were negligent in some manner. The trial court found that Dr. Tirgan was not qualified to render an expert opinion in this case, and Appellant did not appeal that ruling.

Appellant named Dr. Frist as an expert only two days before the summary judgment hearing. Respondents had no opportunity to depose Dr. Frist. As a result, the only evidence that the trial court had to consider was Dr. Frist's affidavit. Therefore, we focus solely on Dr. Frist's affidavit to determine whether summary judgment was proper.

municated his thoughts for treatment" before Appellant's tumor was tested. Stated differently, Dr. Frist's affidavit fails to explain how Dr. Brusett's post-diagnosis treatment would have affected the pathologist's initial diagnosis of the tumor. As a result, there is no evidence that Dr. Brusett's failure to communicate Appellant's possible treatment options with the pathologist was the proximate cause of Appellant's injuries.

■ The dissent asserts that had the pathologist been aware that Dr. Brusett intended to immediately remove the affected portion of the lung upon a diagnosis of pulmonary blastoma, then the pathologist *might* have qualified or sought to confirm his preliminary diagnosis. The dissent's argument disregards the necessity that a surgeon be able to rely upon inter-operative diagnoses to determine a patient's proper treatment. Moreover, the position argued by the dissent would set the precedent that a speculative hypothetical may serve as the standard of care in an action for medical malpractice. In South Carolina, medical malpractice actions require a greater showing than generic allegations and conjecture.

■ Second, Appellant provides no evidence that her expert, Dr. Frist, is familiar with the standard of care that Dr. Brusett or Dr. Habermeier allegedly breached, nor does Appellant offer what the applicable standard of care might be. Nothing in Dr. Frist's affidavit, or in the record, suggests it was unreasonable for Dr. Brusett to extract the lesion after receiving a diagnosis of "probable pulmonary blastoma," and nothing in Dr. Frist's affidavit, or in the record, instructs the Court with any specificity as to how competent practitioners in these fields would have performed this procedure differently.

We are mindful of the important interests at stake in this case. People who receive sub-standard medical care must be able to recover for injuries caused by at-fault physicians, and Plaintiffs must have a meaningful opportunity to present and support their claims in court. However, all of the evidence in this case suggests that Appellant received competent medical care. This is a case where a thoracic surgeon removed a piece of suspicious tissue, a pathologist and his partner returned a preliminary diagnosis of rare cancer, and the surgeon decided to take the tissue out. In support of her claim, Appellant offers an expert's affidavits saying "you should have communi-

cated better and you got the diagnosis wrong." The affidavits do not establish how the facts of this case would be different had the surgeon and pathologist "communicated better," nor do they address the standard of care in any detail.

In affirming the trial court, we rely solely on the requirements of Rule 56, SCRCP, and the specific requirements for expert testimony in medical malpractice actions. A doctor need not practice in the particular area of medicine as the defendant doctor to be qualified to testify as an expert. *Creed v. City of Columbia,* 310 S.C. 342, 345, 426 S.E.2d 785, 786. (1993). Regardless of the area in which the prospective expert witness practices, he must set forth the applicable standard of care for the medical procedure under scrutiny and he must demonstrate to the court that he is familiar with the standard of care. A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner. Despite Dr. Frist's qualifications, his affidavit does not set forth the standard of care he alleges was breached, nor does it provide that he is familiar the standard of care. Therefore, we hold that the trial court did not err in granting summary judgment in favor of Respondents Brusett, Pee Dee Cardiovascular, Habermeier and Pee Dee Pathology.

## II. Vicarious Liability of McLeod Regional

Appellant argues that McLeod Regional had a nondelegable duty to provide competent pathology care to Appellant and therefore was vicariously liable for Dr. Habermeier's preliminary misdiagnosis that resulted in unnecessary surgery. Because we hold that the trial court properly granted summary judgment in favor of Dr. Habermeier and Pee Dee Pathology, we need not address this issue. *See Rookard v. Atlanta & C. Air Line Ry. Co.,* 84 S.C. 190, 192, 65 S.E. 1047, 1048 (1909) (judgment on the merits in favor of the agent bars a vicarious liability action against the principal).

### CONCLUSION

For the foregoing reasons, we affirm the trial court's decision granting the respondents' motions for summary judgment.

MOORE, J. and Acting Justice PAULA H. THOMAS concur. PLEICONES, J., dissenting in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES:

I respectfully dissent from the majority's decision to affirm the grant of summary judgment to the Respondent doctors and their practices, but join the decision to affirm the grant to Respondent McLeod. As explained below, I find Dr. Frist's affidavit adequate to create a genuine issue of material fact whether the communication between the surgeon and the pathologist fell below generally accepted standards and procedures.[4]

As I understand Dr. Frist's affidavit, the assertion is that if Dr. Brusett had informed the pathologist that he intended to immediately remove the affected portion of the lung if the intra-operative diagnosis were cancer, then Dr. Habermeier might have qualified his preliminary diagnosis. Contrary to the majority's characterization of the affidavit, it does not assume that Dr. Habermeier's diagnosis would have been different, but rather opines that had Dr. Habermeier been aware of Dr. Brusett's intentions, Dr. Habermeier would have properly communicated "his pathological diagnosis and thoughts, to the rareness of his findings, so that the diagnosis could be used for the proper treatment of the patient at that moment."

The majority holds that there is nothing in the affidavit to suggest that it was unreasonable for Dr. Brusett to have

---

4. I note with concern that the majority opinion could be read to import the medical malpractice plaintiff's evidentiary burden at trial into the summary judgment standard. *Durham v. Vinson, Pederson v. Gould, Cox v, Lund,* and *Green v. Lilliewood* are all appeals from cases that went to trial, and which decide whether the plaintiff had met her burden at that proceeding. A motion for summary judgment is not a mini-trial, requiring the medical malpractice plaintiff to present evidence meeting her trial burden. We are concerned here with the sufficiency of Dr. Frist's affidavit, and not with whether "the evidence as a whole [meets] the criteria laid out in *Pederson* and its progeny [sic]." *See Schulz v. Esposito,* 210 A.D.2d 307, 308, 619 N.Y.S.2d 774, 775 (1994)("Issue finding rather than issue determination is the key [to summary judgment]").

removed part of the lung upon receiving the blastoma diagnosis. I do not disagree; however, as I understand the Appellants' theory, they allege a deviation from the standard of care in the communications between the surgeon and the pathologist, not in the surgical decision made upon receipt of the pathology report. In my opinion, the reasonableness of Dr. Brusett's decision is not relevant to the summary judgment motion.

The majority also affirms, without discussion, the trial court's holding that Dr. Frist's affidavit failed to establish his familiarity with the standard of care. I would hold that Dr. Frist's affidavit indicating proficiency in the specialty involved, coupled with the statement "It is my opinion, to a reasonable degree of medical certainty, that each of these Defendants deviated from the acceptable standard of care and were negligent ... in the following particulars ...." is sufficient to establish that he is familiar with the standard of care.

In my opinion, the trial court erred in holding that Dr. Frist's affidavit did not demonstrate the existence of a genuine issue of material fact whether one or both physicians committed malpractice in failing to adequately communicate before and during the biopsy. *See, e.g., Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 594 S.E.2d 455 (2004) (summary judgment is drastic remedy that should be cautiously invoked). I would therefore reverse the orders granting Respondents Brusett and Habermeier and their groups summary judgment. I would affirm the grant of summary judgment to McLeod, however, because there is simply no evidence in this record that the Appellants looked to the hospital rather than to the individual doctors for Mrs. Davis's care. *Osborne v. Adams*, 346 S.C. 4, 550 S.E.2d 319 (2001) (in order to hold hospital vicariously liable for staff negligence, plaintiff must present evidence that she looked to the hospital for care).

BURNETT, J., concurs.