THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Corrie R.
 Cartee, as personal representative for the Estate of Gene Edward Cartee, Sr.,
 deceased, Appellant,
 v.
 David Mark
 Countryman, M.D.; Walter S. Revell, Jr., M.D.; Piedmont Surgical Associates
 of York County, P.A.; Amisub of South Carolina, Inc. d/b/a Piedmont Medical
 Center; Tenet Healthcare Corp., d/b/a Piedmont Healthcare System and Piedmont
 Medical Center; Nathaniel C. Edwards, M.D.; Thomas V. Johnson, M.D.; Harry E.
 Hicklin, III, M.D., The Sanger Clinic, P.A.; Rajesh Hari Kedar, M.D.;
 Metrolina Medical Associates, P.A.; and Robert Paul Neueton Mingus, M.D.;,
 Defandants,/Oof whom David Mark Countryman, M.D.; and Piedmont Surgical
 Associates of York County, P.A.and Rajesh Hari Kedar, M.D.; Metrolina Medical
 Associates, P.A.;and Robert Paul Neueton Mingus, M.D. are the Respondents.
 
 
 

Appeal From York County
 S. Jackson Kimball, III, Circuit Court
 Judge
Unpublished Opinion No. 2010-UP-425
Heard June 16, 2010  Filed October 6,
 2010
REVERSED

 
 
 
 Benjamin Mabry and Charles L. Henshaw, Jr., both of Columbia, for
 Appellant
 Ashby W. Davis, , Steven A. Snyder, David L. Williford, Collie W.
 Lehn, Jr., all of Greenville, Edward G. Smith and H. Spencer King ,both of
 Spartanburg, Robert H. Hood and Mary Agnes Craig, both of Charleston for
 Respondents.
 
 
 

PER CURIAM: In this medical malpractice case, the estate of Gene Edward
 Cartee Sr., (Cartee) appeals the special referee's grant of summary judgment in
 favor of multiple respondents.  We reverse.
FACTS
On December 19, 2002, Gene Edward Cartee
 Sr. (Cartee) arrived at the emergency department of Piedmont Medical Center of
 Rock Hill, suffering from rectal bleeding.  He was admitted under the care of
 internist Maria Redmond, M.D., an employee of Metrolina Medical Assoc., P.A.  Redmond
 consulted gastroenterologist Larry Pennington, M.D. who conducted a colonoscopy
 on December 20, discovering two cancerous masses in Cartee's large intestine. 
 Because one of masses appeared to completely block the intestine, Redmon and
 Pennington consulted general surgeon David Mark Countryman, M.D.  After
 examination and review of Cartee's medical history, Countryman recommended an
 abdominal colectomy because of active colon bleeding and because one of the
 cancerous masses threatened to completely block the colon, both conditions
 Countryman opined were life-threatening.  Accordingly, the surgery was
 scheduled for December 23.
On
 December 21, Rajesh Hari Kedar, M.D. took over the internal medicine aspects of
 Cartee's care from Redmond and conducted a review of Cartee's pre-op EKG, and
 lab results.  Kedar stated that because Cartee indicated he had no chest pains,
 shortness of breath, chest pressure, or symptoms of angina, he did not
 recommend a pre-op cardiac stress test.  The following day, December 22,
 Richard Tarvers, M.D. conducted a pre-op anesthesia evaluation.  Then again, on
 the morning of surgery, Tarvers's partner Dr. Mingus evaluated Cartee and served
 as the anesthesiologist for the colectomy.  Neither Kedar, Countryman, Mingus,
 Redmon or Tarvers indicated Cartee needed further cardiac work-ups or testing
 prior to surgery, or voiced any concern to warrant postponing the surgery.  On
 December 23, Countryman successfully removed nearly all of Cartee's colon. 
On
 December 26, Cartee developed atrial fibrillation (irregular heartbeat) and as
 a result cardiologist Nathaniel Edwards, M.D., was consulted to treat the
 condition.  On the evening of December 29, Cartee suffered a heart
 attack.  The following morning, Cartee apparently had either a second heart
 attack or a continuation of the same "coronary event" which caused
 the first heart attack.  As a result of this "coronary event," Harry
 E. Hicklin, III, M.D. conducted an emergent catheterization by performing a balloon
 angioplasty on the anterior descending artery and inserting a stent.  On
 January 3, 2003, Dr. Edwards performed a second catheterization, placing a stent
 in the circumflex.  
On
 January 7, 2003, Cartee died of severe coronary artery disease.  Corrie Cartee,
 the personal representative of Cartee's estate brought this medical malpractice
 claim against seven doctors involved in Cartee's care and their respective
 professional associations.  On July 11, 2008, the trial court entered an order
 granting summary judgment in favor of Countryman and his professional
 association Piedmont Surgical Associates.  Subsequently, on August 14, 2008,
 the trial court entered summary judgment in favor of Kedar and Mingus as well. 
 Cartee now appeals the trial court's grant of summary judgment as to
 Countryman, Kedar, Mingus, and their respective professional associations.  On
 December 29, 2008, this court granted a motion to consolidate the appeals.  
ISSUE
Did the trial court err in granting
 summary judgment because Cartee did not create a genuine issue of material fact
 as to whether the respondents deviated from the generally recognized standard
 of care and caused Cartee's injury and death?[1]  
STANDARD
 OF REVIEW
Summary judgment is a drastic remedy,
 "[t]he purpose of [which] is to expedite the disposition of cases which do
 not require the services of a fact finder."  Singleton v. Sherer,
 377 S.C. 185, 198, 659, S.E.2d 196, 205 (Ct. App. 2008).  Rule 56(c), SCRCP
 provides that summary judgment is proper when: "the pleadings,
 depositions, answers to interrogatories, and admissions on file, together with
 the affidavits, if any, show that there is no genuine issue as to any material
 fact and that the moving party is entitled to a judgment as a matter of
 law."  On appeal, an appellate court applies the same standard as the
 trial court under Rule 56(c), and likewise must view the evidence and all
 inferences therefrom in the light most favorable to the non-moving party.  Fleming
 v. Rose, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).  
LAW/ANALYSIS
In order to establish a genuine issue of
 material fact sufficient to overcome summary judgment a plaintiff in a medical
 malpractice case must provide evidence of (1) a generally recognized and
 accepted standard of care, and (2) a departure from that standard by the
 defendant.  David v. McLeod Reg'l Med. Ctr., 367 S.C. 242, 247, 626
 S.E.2d 1, 4 (2006).  In this regard, a plaintiff "must provide expert
 testimony to establish both the required standard of care and the defendant['s]
 failure to conform to that standard[] . . . ."  Id. at 248, 626
 S.E.2d at 4.  However, to overcome summary judgment, the non-moving party need
 only present a scintilla of evidence creating a genuine issue of material fact.  Zurich Am. Ins. Co. v. Tolbert, 387 S.C. 280, 283, 692 S.E.2d 523, 524
 (2010); Hancock v. Mid-South Mgmt. Co., Inc., 381 S.C. 326, 330, 673
 S.E.2d 801, 803 (2009).  
In this case, Cartee avers, as to each
 respondent, the trial court erred in (1) finding no genuine issue of material
 fact as to a recognized standard of care, (2) finding no genuine issue of
 material fact tending to establishing a deviation from that standard of care,
 and (3) finding Cartee's expert, Vasquez, did not testify as to proximate cause
 with the requisite degree of certainty.
Upon
 review of the record, pleadings, affidavits, and Vasquez's deposition, we
 believe Cartee presented a scintilla of evidence sufficient to withstand
 summary judgment.  As to the first element, Vasquez's deposition and affidavit opined
 that the appropriate standard of care is one common to all physicians and
 required the respondents to conduct further evaluation and testing of Cartee's
 cardiac functionality.  Whether this standard is appropriate under the
 circumstances, or whether some other standard is imposed by virtue of being a
 specialist in a particular field is an issue of fact.  
Similarly,
 Vasquez's affidavit and deposition present a scintilla of evidence that the
 respondents deviated from the standard of care by failing to consider or notice
 certain "risk factors" and make further inquiry into Cartee's cardiac
 condition.  Whether these factors were known to the respondents at the time, or
 whether each doctor's failure to consult a cardiologist or investigate further
 amounts to a deviation from Vasquez's alleged standard of care are issues of
 fact.
Finally, as to the issue of proximate cause,
 Vasquez's affidavit states that in his opinion Cartee's death "most
 probably could have been prevented, had [he] received . . . treatment meeting
 the standard of care."  Further, Vasquez opined that certain risk
 factors should have provided sufficient indication of the need for the pre-op
 cardiac evaluation, which would have ultimately led to a different course of
 treatment and/or action.  We find that in the light most favorable to
 Cartee, this suffices as a mere scintilla of evidence sufficient to withstand
 summary judgment.  We recognize the depositions of the attending
 cardiologists diverge from Vasquez's testimony as to what tests would have been
 conducted and how the course of treatment would or would not have altered had
 the request for a cardiac evaluation been made; however, Cartee is only
 required to present a scintilla of evidence to survive the motion. 
 Accordingly, we hold the trial court erred in granting summary judgment.
CONCLUSION
For
 the reasons stated above, the ruling of the trial court is
REVERSED.
FEW, C.J., THOMAS and PIEPER JJ.,
 concur.

[1]  We note Cartee
 also makes the following arguments pertaining specifically to respondent
 Mingus:  (1) Did the trial court erroneously base its grant of summary judgment
 on a ground not raised by the defendant's motion? (2) Did the trial court err
 in granting summary judgment on the grounds that Cartee's expert did not
 testify on the issue of proximate cause with the requisite certainty? (3) Did
 the trial court err in holding Cartee's expert testimony was not sufficient to
 establish a standard of care by an anesthesiologist to ask for a pre-surgical
 heart evaluation?  However, in light of our disposition, we need not address
 these issues.