Diane S. **BOYLE**, as Personal Representative of the Estate of John Francis Boyle, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

**Civil Action No. 9:09–939–SB.**

United States District Court, D. South Carolina, Beaufort Division.

March 9, 2012.

Carl H. Jacobson, Jonathan F. Krell, Uricchio Howe Krell Jacobson Toporek Theos and Keith, Charleston, SC, for Plaintiff.

Lee Ellis Berlinsky, U.S. Attorneys Office, Charleston, SC, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO LIABILITY

SOL BLATT, JR., Senior District Judge.

This matter came before the Court for a non-jury trial on the Plaintiff's action brought against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–80 (hereinafter referred to as "the FTCA").[1] Carl Jacobson and Jonathan Krell represented the Plaintiff at trial, and Lee Berlinsky represented the Defendant. The Court commends counsel for representing their clients zealously and without unnecessary contention.

The parties submitted proposed findings of fact and conclusions of law, and now—having thoroughly reviewed and considered the testimony, the exhibits, and the relevant law—the Court makes the following findings of fact and conclusions of law

pursuant to Rule 52 of the Federal Rules of Civil Procedure.[2]

## FINDINGS OF FACT

1. The Plaintiff, Diana S. Boyle (hereinafter referred to as "the Plaintiff") is the surviving wife of the Decedent, John Francis Boyle (hereinafter referred to as "the Decedent" or "Mr. Boyle"), and the duly-appointed Personal Representative of the Estate of Mr. Boyle.

2. Mr. Boyle received a kidney transplant in November of 2000.

3. Following his transplant, Mr. Boyle was prescribed Tacrolimus, which is an immunosuppressant medication that helps prevent a person's immune system from rejecting a transplanted organ.

4. Tacrolimus is available under the brand name "Prograf," and Prograf is available for oral administration as capsules in the following dosages: 0.5 milligram, 1 milligram, or 5 milligrams. The colors and sizes of 0.5 milligram capsules, 1 milligram capsules, and 5 milligram capsules are different, and they are distinguishable by sight. In addition, each capsule contains a marking identifying the dosage. Prograf is considered a narrow therapeutic index medication, which means that there is a small margin of error in dosing and that significant toxicity can result from a minor overdose.

5. The dosages of Prograf prescribed for Mr. Doyle varied from 12 milligrams per day immediately following his transplant (a 5 milligram capsule plus a 1 milligram capsule, taken twice daily) to 3 milli-

---

**1.** The Plaintiff filed her amended complaint on April 13, 2009, alleging that the Decedent, John Francis Boyle, died of Tacrolimus (available under the brand name "Prograf") toxicity and kidney failure due to the negligent, careless, and reckless filling and dispensing of the Decedent's medication by employees at

the Beaufort Naval Hospital Pharmacy. (Entry 1 at 2.)

**2.** To the extent that the Court has made "findings of fact" that would be better expressed as "conclusions of law," and vice versa, each category is expressly incorporated into the other.

grams per day at the time of his death (a 1 milligram capsule plus a 0.5 milligram capsule, taken twice daily).

6. In April of 2005, doctors at the Emory Hospital Transplant Clinic decreased Mr. Boyle's prescribed dosage of Prograf to 3 milligrams per day (a 1 milligram capsule plus a 0.5 milligram capsule, taken twice daily).

7. It appears that Mr. Boyle filled Prograf 0.5 milligram capsule prescriptions at a Publix pharmacy on April 15, 2005, and May 15, 2005. It further appears that Mr. Boyle received 60 capsules of 0.5 milligram Prograf on April 15, 2005, and 40 capsules of 0.5 milligram Prograf on May 15, 2005. The Court finds no evidence in the record demonstrating that Publix pharmacy breached the standard of care in filling Mr. Boyle's prescriptions.

8. On June 28, 2005, Mr. Boyle's internist, Dr. Michael Mayes, wrote Mr. Boyle a prescription for 180 0.5 milligram capsules of Prograf with three refills.

9. Mr. Boyle presented the 0.5 milligram prescription to the Beaufort Naval Hospital on July 1, 2005. Pharmacist Johnelle Ohonba entered and filled the prescription.

10. At the end of September 2005, Mr. Boyle received his first refill of the 0.5 milligram Prograf prescription from Beaufort Naval Hospital Pharmacy.

11. Mr. Boyle received his second refill of the 0.5 milligram Prograf prescription at the beginning of December 2005. This December refill is the subject of this litigation; however, based on the evidence in the record and for the reasons set forth below, the Court finds that the Beaufort Naval Hospital Pharmacy actually mis-filled Mr. Boyle's 0.5 milligram Prograf prescription in December of 2005, and instead of dispensing 180 0.5 milligram capsules of Prograf, the Beaufort Naval Hospital Pharmacy negligently dispensed 180 5 milligram capsules of Prograf to Mr. Boyle.

12. After the December 2005 mis-fill, Mr. Boyle was admitted to the Hilton Head Regional Medical Center three times: on February 2, 2006, on February 19, 2006, and on March 19, 2006.

13. The first admission included the discharge diagnoses of "acute renal failure secondary to dehydration" and "renal insufficiency." The Court finds from the more credible evidence that it is most probable that at the time of this admission, Mr. Boyle was taking an improper daily dose of Prograf due to the December mis-fill, and that this improper dose contributed, at least in part, to Mr. Boyle's need for hospitalization.

14. The second admission included the discharge diagnosis of "acute renal failure on top of chronic renal insufficiency." Again, the Court finds from the more credible evidence that it is most probable that at the time of this admission, Mr. Boyle was taking an improper daily dose of Prograf due to the December mis-fill, and that this improper dose contributed, at least in part, to Mr. Boyle's need for hospitalization.

15. On his third and final admission following the December mis-fill, Mr. Boyle's nephrologist, Dr. Loon, discovered that a bottle of 0.5 milligram Prograf medication that had been dispensed by the Beaufort Naval Hospital Pharmacy to Mr. Boyle actually contained 5 milligram capsules of Prograf. Dr. Loon's consultation note of March 23, 2006, includes his finding that Mr. Boyle "has been taking an excessive does of Tacrolimus or Prograf due to his pharmacy giving him a 5 milligram instead of a 0.5 milligram tablet," and he wrote that "[t]his would certainly explain most of his symptoms and his renal failure."

16. Doctors at the Hilton Head Regional Medical Center diagnosed "acute renal failure" and an "excessive dose of Tacrolimus or Prograf" and transferred Mr. Boyle to the Emory Hospital Kidney Transplant Center, where it was determined that the effects of the Prograf toxicity were irreversible.

17. Mr. Boyle was placed on life support, and on April 28, 2006, he died as a result of Prograf toxicity. The discharge summary from Emory Hospital includes the discharge diagnosis of "failure of renal transplant due to Prograf toxicity."

18. It is undisputed that the Beaufort Naval Hospital Pharmacy did not carry Prograf as a formulary drug, and at all times relevant to this lawsuit, Mr. Boyle was the only patient who received Prograf in any dosage from the Beaufort Naval Hospital Pharmacy.

19. On May 12, 2005, the Beaufort Naval Hospital Pharmacy purchased three bottles of 5 milligram Prograf, each containing 100 capsules. Importantly, during the recycle period of October 3, 2006, the Beaufort Naval Hospital returned 1.1 bottles of 5 milligram Prograf to its reverse distribution vendor.

20. The Court finds it most probable that the difference between the three 100–capsule bottles of 5 milligram Prograf that the Beaufort Naval Hospital Pharmacy purchased on May 12, 2005, and the 1.1 bottles of 5 milligram Prograf that the Beaufort Naval Hospital Pharmacy returned to its reverse distribution vendor in October of 2006 amounts approximately to the 180 capsules of 5 milligram Prograf that the Beaufort Naval Hospital Pharmacy improperly dispensed to Mr. Boyle in December of 2005.

21. Because it appears that Mr. Boyle's prescription was written clearly and entered properly into the Beaufort Naval Hospital Pharmacy's computer system, the preponderance of the evidence supports the conclusion that the error occurred during the selection and filling of the medication.

22. The Court believes that the greater weight of the evidence supports the conclusion that the prescription was not properly double-checked by employees of the Beaufort Naval Hospital Pharmacy.

23. Finally, the Court is not persuaded by the Defendant's contention that Mr. Boyle placed 5 milligram capsules of Prograf (that were left over from a 2001 prescription) into the 0.5 milligram Prograf bottle provided to him by the Beaufort Naval Hospital Pharmacy in December of 2005.

### CONCLUSIONS OF LAW

1. The United States is the proper Defendant in this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–80.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

3. Pursuant to the FTCA, this Court has jurisdiction of "claims against the United States, for money damages, ... for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674. As a limited waiver of sovereign immunity, courts must strictly interpret and apply the FTCA. *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Gould v. U.S. Dep't of Health & Human Servs.,* 905 F.2d 738, 741 (4th Cir.1990) (en banc).

4. Under the FTCA, procedural matters are governed by federal law; how-

ever, the FTCA directs courts to examine substantive legal issues pursuant to the laws of the place where the act or omission occurred. *Dumont v. United States,* 80 F.Supp.2d 576, 581 (D.S.C.2000); *Todd v. United States,* 570 F.Supp. 670, 677 (D.S.C.1983).

5. To establish a negligence claim pursuant to South Carolina law, a plaintiff must allege facts that demonstrate the concurrence of three elements: (1) a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by the breach. *Stevens v. Allen,* 342 S.C. 47, 51, 536 S.E.2d 663, 665 (2000).

6. In addition, in a case involving a medical professional's alleged negligence, a plaintiff must show that the professional failed to exercise the degree and standard of care and skill that is ordinarily exercised by members of the profession in good standing acting under the same or similar circumstances. Moreover, a plaintiff must show that the defendant's departure from the standard of care was the proximate cause of the injuries. *David v. McLeod Reg'l Med. Ctr.,* 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006); *Durham v. Vinson,* 360 S.C. 639, 602 S.E.2d 760, 766 (2004); *Doe v. Am. Red Cross Blood Servs., S.C. Region,* 297 S.C. 430, 435, 377 S.E.2d 323, 326 (1989); *Green v. Lilliewood,* 272 S.C. 186, 193, 249 S.E.2d 910, 913 (1978); *see also Evans v. Rite Aid Corp.,* 324 S.C. 269, 275, 478 S.E.2d 846, 849 (1996) ("Pharmacists clearly fall into the category of a 'profession which furnishes skilled services for compensation'; therefore, they could be liable in negligence for failure to conform to the practices of their profession.").

7. Expert testimony is required to establish both the standard of care and the

defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the defendant's conduct. *Pederson v. Gould,* 288 S.C. 141, 143, 341 S.E.2d 633, 634 (1986).

8. Under the doctrine of comparative negligence, a plaintiff in a negligence action may recover damages so long as his or her negligence is not greater than that of the defendant, but the plaintiff's recovery shall be reduced in proportion to the amount of his or her negligence. *Nelson v. Concrete Supply, Co.,* 303 S.C. 243, 245, 399 S.E.2d 783, 784 (1991).

9. Here, the Court finds not only that the Plaintiffs offered sufficient expert testimony to establish by the greater weight of the evidence the standard of care of a reasonable pharmacist and/or pharmacy technician, as well as to establish a breach of the standard care, but also, that the Plaintiffs offered sufficient evidence to permit a lay person to recognize the Defendant's negligence in this case without the aid of expert testimony. In other words, as the Court stated in its findings of fact, based on its review of the evidence in the record, the Court finds that the Beaufort Naval Hospital Pharmacy misfilled Mr. Boyle's 0.5 milligram Prograf prescription by improperly dispensing 5 milligram Prograf capsules. In addition, the Court finds that this mis-fill by employees of the Beaufort Naval Hospital Pharmacy constituted a breach of the standard of care, as established both by the expert testimony provided by the Plaintiff and by the common knowledge or experience of an ordinary person. Finally, the Court finds that the Defendant's breach of the standard of care proximately caused Mr. Boyle's Prograf toxicity, thereby contributing to his death.[3]

**3.** The Court's conclusions are supported by the expert opinion of Dr. Taber, the opinion

10. Next, despite the Defendant's attempt to lay blame on the Plaintiff for failing to follow up with his primary care physician or his nephrologist following his hospitalizations on February 2 and February 19, the Court does not find that it is more likely than not that a follow-up visit would have included a Tacrolimus-level test.

11. Nevertheless, the Court does find that at some point between receiving the mis-filled bottle from the Beaufort Naval Hospital Pharmacy in December of 2005 and his final March 2006 hospitalization, Mr. Boyle should have recognized that the bottle of 0.5 milligram capsules that he received in December of 2005 actually contained 5 milligram capsules.

12. As mentioned in the findings of fact, a 0.5 milligram capsule is a different color and size than a 5 milligram capsule, and the two capsules are distinguishable by sight. In addition, each capsule contains a visible marking indicating its dosage. Equally important, the record indicates that Mr. Boyle had been prescribed varying doses of Prograf for approximately five years, and that he was familiar with the 0.5 milligram capsule, the 1 milligram capsule, and the 5 milligram capsule at the time of the mis-fill. Indeed, immediately prior to the mis-fill, Mr. Boyle was taking a 0.5 milligram capsule plus a 1 milligram capsule twice a day, and the record is replete with evidence indicating that Mr. Boyle was compliant and conscientious when it came to his medication regime.

13. Thus, the Court finds that Mr. Boyle was negligent by failing to recognize at some point between the mis-fill and his final hospitalization that the bottle provided to him by the Beaufort Naval Hospital Pharmacy in December of 2005 contained 5 milligrams capsules rather than the prescribed 0.5 milligram capsules, and further, the Court finds that Mr. Boyle's negligence contributed to his injuries. Nevertheless, the Court does not believe that Mr. Boyle's negligence exceeds that of the Defendant; rather, the Court believes that 25 percent of the fault is attributable to Mr. Boyle.

14. Next, however, the Court does not find that the evidence establishes any intervening or superseding negligence on the part of the Hilton Head Regional Medical Center for failing to recognize the mis-fill during Mr. Boyle's February hospitalizations.

12. Finally, although the Court finds that the Plaintiff has met her burden of proving the necessary elements to establish her negligence claim against the Defendant, whose employees were acting in the course and scope of their duties, so as to entitle the Plaintiff to actual damages in this case, the Court does not feel that the acts of the Defendant's employees amount to reckless, wilful, or wanton conduct, so as to entitle the Plaintiff to punitive damages in this case.

### CONCLUSION

In accordance with the foregoing, the Court finds and concludes that the Plaintiff has met her burden of proof to establish the Defendant's liability. Having resolved the issue of liability, the Court will hear and determine the issue of damages on March 20 and 21, 2012, beginning at 10:00 a.m. on March 20, 2012.

**AND IT IS SO ORDERED.**

letters of the Plaintiffs treating physicians (Dr. Koko, Dr. Loon, and Dr. Mayes), certain portions of the Defendant's expert opinion, as well as the documentary evidence presented at trial and the mis-filled bottle of Prograf itself, which the Court received into evidence.