0882

Jeannette MANLEY, Appellant v. Lewis F. MANLEY, Sr., Lewis F. Manley, Jr., Merry Lynn Manley Kelly and Dr. E. N. Davis, Respondents.

(353 S. E. (2d) 312)

Court of Appeals

*Herman E. Cox,* Greenville, *for appellant.*

*Alexander S. Macaulay, Theodore A. Snyder, Jr.,* Walhalla, *William M. Hagood, III,* and *David L. Moore,* Greenville, *for respondents.*

Heard Jan. 27, 1987.

Decided Feb. 16, 1987.

CURETON, Judge:

In this tort action appellant Jeanette Manley sued her former husband, her two children and a physician for false imprisonment, outrage and defamation. The trial court granted the respondents' motions for summary judgment. The mother appeals the granting of the motions. We affirm.

The respondent Lewis F. Manley, Sr. (father) is the former husband of Jeanette Manley. Respondents Lewis F. Manley, Jr. (Lewis, Jr.) and Merry Lynn Manley Kelly (Merry Lynn) are her children. Respondent Davis (Dr. Davis) is a psychiatrist. The gravamen of the mother's suit is her involuntary commitment to a state psychiatric facility.

The mother's complaint alleges that on January 30, 1984, the respondents "accused [her] of being mentally ill and caused her to be admitted to the South Carolina State Hospital for the insane." She further alleges that she was not mentally ill and was ordered discharged from the Hospital on February 6, 1984. She additionally alleges that as "a direct and proximate result of the actions of these [respondents], [she] has been defamed, falsely imprisoned, and outraged."

The answer of the father is a general denial. The children also assert a general denial and by affirmative defense allege that because the mother threatened to take her own life and the life of their father, it was necessary that they take action to preclude the mother from harming herself and others. They also allege that their actions were both lawful and justified under the circumstances. Dr. Davis filed a motion to make the mother's complaint more definite and certain, but the motion has never been heard.

Thereafter, the mother took the deposition of all of the respondents and Dr. Davis took the deposition of the registrar of the state mental health facility to which the mother was admitted. All respondents then moved for summary judgment and submitted in support of their motions the depositions and the affidavits of Lewis, Jr., Merry Lynn, and psychiatrists Dr. John P. Taylor, Dr. Eloida Villafranca and Dr. Leticia Matawaran.

The affidavits of Lewis, Jr. and Merry Lynn state that in January 1984, their mother called each of them and threatened to take her life and the life of their father. These respondents' affidavits also indicate that after consultation with each other, it was determined that lawful steps had to be taken to prevent their mother from harming herself and others. Both respondents' affidavits denied that their father had anything to do with the mother's commitment to the hospital. The depositions of the father, Lewis, Jr. and Merry Lynn fully support these affidavits. Dr. Davis testified on deposition that although the mother denied she had threatened to kill herself and her former husband, she did admit to a previous suicide attempt. He further testified that after examining the mother and talking to the children, he was convinced that the mother suffered from a mental disorder

that required further evaluation and treatment. Other affidavits and depositions submitted by the respondents show that while the mother was found not to be mentally ill on February 6, 1984 and was discharged from the State Mental Hospital, Dr. Davis had acted properly in recommending that she be sent to the Hospital for evaluation.

The mother submitted no affidavits or other evidence in opposition to the motions. The trial judge found from a review of the evidence that the father was not in any way involved in the commitment of the mother to the State Hospital. He also found that the other respondents "acted in a reasonable and lawful manner and were justified in taking the action that they took."

The issue on appeal is whether there is a genuine issue of a material fact that the actions taken by the respondents in committing the mother to the hospital were justified, lawful or privileged.

The purpose of summary judgment is to obviate delay where there is no material issue of fact involved. *Hammond v. Scott*, 268 S. C. 137, 232 S. E. (2d) 336 (1977). Where a motion for summary judgment is made and supported by proper affidavits, a plaintiff cannot rest on allegations in his pleadings that are controverted by affidavits and/or depositions submitted by defendants. S.C.R. Civ. P. 56(e); *Dyer v. Moss*, 284 S. C. 208, 325 S. E. (2d) 69 (Ct. App. 1985).

Citing the case of *Bell v. Dixie Furniture Co., Inc.*, 285 S. C. 263, 329 S. E. (2d) 431 (1985), the mother argues that the respondents had no excuse or justification in law for committing her to the hospital and their conduct was outrageous. In the seminal case of *Ford v. Hutson*, 276 S. C. 157, 276 S. E. (2d) 776 (1981), our Supreme Court adopted *Restatement (Second) of Torts* Section 46 as the standard of conduct for recovery in outrage cases. The standard adopted requires that in order to recover for intentional infliction of emotional distress, the defendant's conduct must have been "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community." *Ford v. Hutson*, 276 S. C. at 162, 276 S. E. (2d) at 778.

The respondents have demonstrated to the satisfaction of this Court that there is no genuine issue of fact

that the conduct of any of the respondents approaches this standard. The evidence is undisputed that the respondents acted in good faith and in a reasonable manner. We therefore hold that the trial judge committed no error in granting the respondents' motions for summary judgment on this cause of action.

The appellant next claims that because she was found not to be mentally ill, her custodial detention for examination by Dr. Davis and confinement to the State Hospital constitute false imprisonment. We disagree. Where one is arrested by lawful authority, an action for false imprisonment cannot be maintained. *Bushardt v. United Investment Co.*, 121 S. C. 324, 113 S. E. 637 (1922); *Watkins v. Mobil Oil Corp.*, 281 S. C. 79, 313 S. E. (2d) 641 (Ct. App. 1984). Even if the arrest is improvidently procured, the wronged party's remedy lies in an action for malicious prosecution. *Bushardt v. United Investment Co., supra.*

The record supports only the conclusion that appellant was lawfully taken into custody and detained pursuant to provisions of Section 44-17-410, Code of Laws of South Carolina, 1976. The actual taking into custody of appellant was performed by a peace officer by order of the probate judge in accordance with provisions of Section 44-17-430, Code of Laws of South Carolina, 1976. We therefore hold that an action for false imprisonment cannot be maintained against the respondents.

The mother's complaint for defamation does not indicate whether her cause of action is one in libel or slander. Because of the manner in which we dispose of this issue, its characterization is immaterial. Under general law, because of the ridicule or contempt involved and the likelihood that the person charged will be deprived of social intercourse, it is actionable *per se*, to impute to another in writing that he suffers from mental illness. 50 Am. Jur. (2d) *Libel and Slander* Section 91 (1970). Where words are actionable *per se*, malice will be implied. *Jones v. Garner*, 250 S. C. 479, 158 S. E. (2d) 909, 32 A. L. R. (3d) 1417 (1968).

Here, the respondents assert that even if their actions defamed the mother, they were lawful under the circumstances because they were in-court proceedings and privileged. Our Supreme Court has held that defama-

tory matter contained in pleadings filed according to law in a court having jurisdiction, if relevant and pertinent to the issues in the case, are absolutely privileged. *McKesson & Robbins, Inc. v. Newsome*, 206 S. C. 269, 33 S. E. (2d) 585 (1945). While acknowledging the privilege, the mother argues that it is not just the assertions in the pleadings that she complains of, but other defamatory assertions. Respondents also argue the alleged defamatory communications were qualifiedly privileged. We agree.

In *Conwell v. Spur Oil Co. of Western South Carolina*, ■ our Supreme Court defined a qualified privilege as:

> * * * A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.

240 S. C. 170, 178, 125 S. E. (2d) 270, 274-75 (1962); *Duckworth v. First National Bank*, 254 S. C. 563, 571, 176 S. E. (2d) 297, 301 (1970).

In determining whether or not the communications ■■ made by the respondents were qualifiedly privileged, due regard must be had for the occasion and the relationship of the parties. *Conwell v. Spur Oil Co. of Western South Carolina, supra.* Here, the affidavits and depositions show beyond dispute that all of the respondents acted in the utmost good faith to deal with the mother's perceived mental disorder. As children, Lewis, Jr. and Merry Lynn had at least a moral duty to protect their mother from harming

herself, their father and others. Dr. Davis likewise had a legal duty to protect the mother and others from the mother. The evidence also presents no factual dispute that the communications exceeded their proper scope or purpose, or that the occasion for the communications was improper or that the publications were performed in an improper manner or to improper parties. We therefore hold that the trial judge did not err in concluding that the actions of the respondents were lawful.

Accordingly the order of the trial judge is

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.