392 S.C. 462 (2011)
710 S.E.2d 67
Martha Lewin ARGOE, Appellant,
v.
THREE RIVERS BEHAVIORAL HEALTH, L.L.C., Psychiatric Solutions, Inc., Phyllis Bryant-Mobley, MD, Glenn Hooker, MD, Aiken Regional Medical Center, Aurora Pavilion, David Steiner, MD, Cheryl C. Dodds, MD, Doris Ann Burrell, RN, Carolina Care Plan, James F. Walsh, Jr., G. Lewis Argoe, Jr. and George L. Argoe, III, Defendants,
Of whom Psychiatric Solutions Inc. is the, Respondent.
No. 26978.
Supreme Court of South Carolina.
Heard April 20, 2011.
Decided May 31, 2011.
*465 Charles M. Black, Jr., Mitchell C. Payne, of Warner, Payne & Black, of Columbia, for Appellant.
Weston Adams, III, Trippett Boineau, III, and Helen F. Hiser, of McAngus Goudelock & Courie, of Columbia, for Respondent.
Justice BEATTY:
This case arises out of the involuntary commitment of Martha Lewin Argoe (Appellant) to Three Rivers Behavioral Health, L.L.C., a psychiatric, inpatient facility that was subsequently *466 purchased by Psychiatric Solutions, Inc.[1] (Respondent). Appellant appeals the circuit court's order granting summary judgment in favor of Respondent as to her causes of action for false imprisonment, defamation, and intentional infliction of emotional distress. We affirm.

I. Factual/Procedural History
Pursuant to section 44-17-410 of the South Carolina Code,[2] Appellant's husband (Husband) filed an Application for Involuntary Emergency Hospitalization for Mental Illness with the Orangeburg County Probate Court on June 6, 2005.
On June 6, 2005, Probate Court Judge Pandora L. Jones-Glover issued an Order of Detention that referenced section 44-17-430[3] of the South Carolina Code and provided that an "officer of the peace take the person [Appellant] alleged to be mentally ill into custody for a period of [time] not to exceed twenty-four (24) hours, during which detention said person shall be examined by a licensed physician."
On June 7, 2005, deputies with the Orangeburg County Sheriff's Department transported Appellant to the emergency room of The Regional Medical Center of Orangeburg (TRMC). At 3:35 p.m., Appellant was given a physical and mental evaluation. Appellant was discharged at 5:13 p.m. with a diagnosis of "Altered Mental Status" and instructions for her to return the following day for further evaluation. Subsequently, Appellant was driven home by law enforcement.
On June 8, 2005 at 3:00 p.m., Dr. Glenn Hooker, who evaluated Appellant at the Orangeburg Area Mental Health Center, completed Part II of the Certificate of Licensed Physician Examination for Emergency Admission pursuant to section 44-17-410(2) of the South Carolina Code. In this document, Dr. Hooker certified that inpatient psychiatric hospitalization was medically necessary for Appellant and identified *467 Aurora Pavilion Behavioral Health Services (Aurora), a division of the Aiken Regional Medical Center, as the facility that would accept Appellant for further treatment. Appellant's medical records verify that she was involuntarily admitted to that facility on June 8, 2005 at 5:45 p.m. An attending physician at Aurora completed the requisite Physician Certification form stating that he certified that "the inpatient psychiatric hospital admission was medically necessary for psychiatric treatment, which could reasonably be expected to improve the patient's condition."
On June 9, 2005, due to health insurance constraints, Appellant was transferred and admitted to Three Rivers Behavioral Health, L.L.C. (Three Rivers). Based on her initial psychiatric evaluation, which was conducted by Dr. Phyllis Bryant-Mobley, a provisional diagnosis was made that Appellant was suffering from bipolar disorder with manic and psychotic features. On June 10, 2005, Three Rivers completed the Notification of Emergency Admission and Appointment of Designated Examiners.
On June 13, 2005, Darlington County[4] Probate Court Judge Marvin Lawson issued an Order for Continued Hospitalization and for Hearing to be held on June 21, 2005. That same day, Judge Lawson appointed Dr. Bryant-Mobley and Doris Ann Burrell, a registered nurse, as designated examiners. On June 14, 2005, Appellant was notified of the hearing and the name of her court-appointed counsel.[5]
On June 21, 2005, Judge Lawson conducted a hearing at which the court-appointed examiners presented their findings regarding Appellant's mental health. Appellant and her attorney were in attendance and participated in the hearing. On that same day, Judge Lawson issued an Order for Continued Treatment with mandatory outpatient treatment to follow at the Orangeburg County Mental Health Facility for a period not to exceed twelve months.[6]
*468 On July 8, 2005, Probate Court Judge Jones-Glover issued an order appointing Dr. Cheryl Dodds, one of Appellant's treating physicians at Three Rivers, to examine Appellant as to whether she needed a guardian and/or a conservator. Although Dr. Dodds believed Appellant to be an "incapacitated person" and in need of a guardian/conservator, she could not definitively determine whether Appellant's condition was temporary or permanent.
On July 20, 2005, Appellant was discharged into the care of her son after receiving treatment at Three Rivers and consenting to voluntarily taking her prescribed medication. Dr. Dodds's discharge diagnosis was "bipolar disease, manic with psychosis."
On June 13, 2007, Appellant filed suit against Husband and her son as well as the hospitals, physicians, and nurses involved in the involuntary commitment proceedings. Appellant asserted causes of action against Respondent for intentional infliction of emotional distress, false imprisonment, conspiracy, defamation, invasion of privacy, and public disclosure of a private fact.
Respondent filed a motion for summary judgment as to all causes of action with the exception of conspiracy. In support of its motion, Respondent initially claimed that it was not a proper party to the lawsuit as the December 2006 Purchase Agreement required Three Rivers to indemnify Respondent and hold harmless from any and all liabilities occurring before January 1, 2007. Additionally, Respondent claimed that the doctrine of res judicata precluded Appellant from challenging the validity of the June 6, 2005 commitment order as Appellant failed to appeal this order. Accordingly, Respondent asserted it was justified in relying on the probate court order.
As to Appellant's specific causes of action, Respondent asserted that it was entitled to summary judgment with respect to false imprisonment and intentional infliction of emotional distress because the actions of Three Rivers were based upon the execution of a valid involuntary commitment order of the probate court. In terms of Appellant's claims of defamation and invasion of privacy/public disclosure of a private fact, Respondent contended that any disclosure of Appellant's psychiatric information was authorized and done in *469 accordance with the judicially-mandated involuntary commitment order and proceedings.
Following a hearing, Circuit Court Judge R. Knox McMahon granted summary judgment to Respondent as to Appellant's claims for false imprisonment, intentional infliction of emotional distress, and defamation.[7]
Appellant appealed Judge McMahon's order to the Court of Appeals. This Court certified this appeal pursuant to Rule 204(b), SCACR.

II. Discussion

A.
When reviewing an order granting summary judgment, the appellate court applies the same standard as the trial court. Fleming v. Rose, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Rule 56(c) of the South Carolina Rules of Civil Procedure provides that a trial court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." USAA Prop. & Cas. Ins. Co. v. Clegg, 377 S.C. 643, 653, 661 S.E.2d 791, 796 (2008). In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. Fleming, 350 S.C. at 493-94, 567 S.E.2d at 860.

B.
All of Appellant's arguments emanate from the following two theories: (1) the Order of Continued Hospitalization (June 13, 1005) and the Order for Continued Treatment (June 21, 2005) were invalid as they were based on the void initial Order *470 of Detention (June 6, 2005); and (2) there was no factual basis to substantiate the findings underlying the Order for Continued Treatment (June 21, 2005). Without a "lawful" probate court order, Appellant claims Respondent was not justified in detaining her, no privilege attached to Respondent's communications about Appellant, and it was not reasonable for Respondent to detain her.
As will be discussed, we find that Appellant is procedurally barred from challenging the validity of the underlying orders. Based on the valid orders, we conclude that the circuit court judge correctly granted summary judgment in favor of Respondent.

C.
We find Appellant's challenge to the validity of the underlying commitment orders was not only untimely but also barred by the doctrine of res judicata.
On March 25, 2008, Appellant filed a Petition to Vacate Commitment Proceedings. In this Petition, Appellant contended the June 6, 2005 Order of Detention was rendered "invalid" after she was discharged on June 7, 2005 from TRMC of Orangeburg. Because the parties could not "re-use" the June 6, 2005 Order of Detention to transport her to Aurora on June 8, 2005, Appellant asserted that the probate court lacked jurisdiction over her and the subject matter of the proceedings.
By order dated August 25, 2008, Probate Court Judge Tiffany Provence denied Appellant's Petition. Judge Provence rejected Appellant's contention that the parties "re-used" the June 6, 2005 Order of Detention. Instead, she found that Dr. Hooker's Certificate of Licensed Physician Examination for Emergency Admission "trigger[ed] S.C.Code Ann. § 44-17-440, which grants state or local law enforcement three days from the date of said certification to transport the person to the hospital designated by the certificate." Referencing the applicable code provisions, Judge Provence found that "no procedural error existed under the S.C. Probate Code."
Appellant appealed Judge Provence's order to the circuit court. By order dated August 18, 2009, Judge Diane S. Goodstein affirmed Judge Provence's order in its entirety.
*471 As outlined above, Appellant's challenge to the commitment proceedings was clearly beyond the statutorily-mandated, fifteen-day time period. See S.C.Code Ann. § 44-17-620 (2002) ("The petitioner or the person shall have the right to appeal from any order of the probate court issued pursuant to Section 44-17-580 to the court of common pleas of the county where the probate court is situated. The notice of intention to appeal together with the grounds for the appeal shall be filed in the probate court and the court of common pleas within fifteen days of the date of the order issued pursuant to Section 44-17-580."); Mims v. Alston, 312 S.C. 311, 440 S.E.2d 357 (1994) (holding that fifteen-day limit provided under section 44-17-620 sets forth the procedure to appeal any order of involuntary commitment from the probate court). Accordingly, we find Appellant was precluded from collaterally attacking the underlying commitment orders. See In re Webber, ___ N.C.App. ___, 689 S.E.2d 468 (2009) (recognizing that failure to timely appeal involuntary civil commitment order precluded collateral attack on alleged erroneous underlying order), cert. denied, 364 N.C. 241, 699 S.E.2d 925 (2010).
Furthermore, there is no evidence that Appellant appealed Judge Goodstein's order. Because Judge Goodstein's order constitutes a final adjudication regarding the validity of the commitment proceedings, the doctrine of res judicata precludes Appellant from asserting any challenge to the commitment orders.[8]See Riedman Corp. v. Greenville Steel Structures, Inc., 308 S.C. 467, 419 S.E.2d 217 (1992) (recognizing that in order to bar subsequent lawsuit based on res judicata, the following elements must be proven: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit).[9]
Additionally, we disagree with Appellant's assertion that her involuntary commitment was without a factual basis. *472 In support of this assertion Appellant directs this Court's attention to numerous documents, including Dr. Leonhardt's consulting opinion dated June 14, 2005, which was requested by Dr. Bryant-Mobley and reviewed by Dr. Dodds. It was indicated in the opinion that Appellant's condition was the result of "marital conflict" as she was an "alleged victim of abuse."
Initially, we would note that Judge Lawson presumably took into consideration Dr. Leonhardt's opinion as the court-appointed examiners presented their findings to Judge Lawson during the June 21, 2005 hearing. Furthermore, the remaining documents offered by Appellant are depositions and affidavits that post-date the involuntary commitment proceedings. These after-the-fact documents cannot operate to retroactively invalidate the commitment orders that were procedurally proper and factually substantiated by court-appointed medical personnel. To find otherwise, we would undermine the probate court's authority in involuntary commitment proceedings.

D.
Having found that the underlying commitment orders were valid, the question becomes whether Judge McMahon correctly granted summary judgment in favor of Respondent as to Appellant's claims of false imprisonment, defamation, and intentional infliction of emotional distress.

1. False Imprisonment
In granting summary judgment to Respondent, Judge McMahon found that Appellant's claim of false imprisonment could not be maintained because Respondent took Appellant *473 into custody and detained her pursuant to a lawful order of the probate court.
"False imprisonment is the deprivation of one's liberty without justification." Jones by Robinson v. Winn-Dixie Greenville, Inc., 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct. App.1995). "In order to recover under a theory of false imprisonment, the complainant must establish (1) the defendant restrained him; (2) the restraint was intentional; and (3) the restraint was unlawful." Id.
"If a hospital fails to follow the statutory requirements for the commitment of a person to a hospital or mental facility, it may be liable for false imprisonment." 18 S.C. Jur. Hospitals § 21 (2011). "If these statutory guidelines are not followed, the hospital may face liability for false imprisonment because any detainment would be unlawful." Id.
As previously discussed, Appellant was lawfully taken into custody and detained pursuant to valid probate court orders. It is generally accepted that:
A person confined pursuant to an authorized mental health commitment proceeding or process may not recover damages in a false imprisonment action. In accordance with the general rule dealing with confinement under process, even where the order of commitment is erroneously made, but is valid on its face and issued by a court of competent jurisdiction, the detention is not false imprisonment.
State hospital officials have no duty to examine the form of the report of the examining psychiatrists upon which an order of commitment was based, nor is there any duty to examine or investigate a commitment order valid on its face, unless there is knowledge that there was, in fact, no basis for implementing the order.
32 Am.Jur.2d False Imprisonment § 33 (2007).
Accordingly, Appellant cannot maintain a claim of false imprisonment against Respondent. See Manley v. Manley, 291 S.C. 325, 353 S.E.2d 312 (Ct.App.1987) (concluding involuntary commitment of mother, who claimed she was not mentally ill, was pursuant to a lawful order of the probate judge and, thus, was not a basis for recovery on a claim of false imprisonment against former husband, two adult children, and psychiatrist).

*474 2. Defamation
In granting summary judgment to Respondent, Judge McMahon found the treatment provided by Three Rivers: (1) was confined to that ordered by the probate court; (2) was not disclosed to any party other than was ordered; and (3) any reports issued by Three Rivers were qualifiedly privileged and, thus, could not be defamatory. Additionally, Judge McMahon found that statutory exceptions allowed the disclosure of privileged psychiatric information in involuntary commitment proceedings.
"The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." Erickson v. Jones St. Publishers, L.L.C., 368 S.C. 444, 464, 629 S.E.2d 653, 664 (2006) (citing Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. 502, 508, 506 S.E.2d 497, 501 (1998)).
"In order to prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Id. "The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Fleming, 350 S.C. at 494, 567 S.E.2d at 860.
We find that summary judgment was properly granted to Respondent as any communications issued by Three Rivers' employees were qualifiedly privileged as they were done in effectuating the lawful orders of the probate court. See Manley, 291 S.C. at 330-32, 353 S.E.2d at 315 (concluding mother, who was involuntarily committed, could not maintain action for defamation against former husband, two adult children, and psychiatrist where assertions made in connection with the involuntary commitment were qualifiedly privileged as they did not exceed their proper scope).
Furthermore, sections 44-22-90 and 44-22-100 of the South Carolina Code authorized Three Rivers' employees to disclose Appellant's mental health records within the confines of the *475 involuntary commitment proceedings. See S.C.Code Ann. § 44-22-90(A)(2), (4) (2002) (providing exceptions to the disclosure of privileged mental health records, including in involuntary commitment proceedings and information related through the course of a court-ordered psychiatric examination); id. § 44-22-100(A)(2), (4), (5) (permitting disclosure of confidential mental health records where disclosure is necessary: for the conduct of proceedings before a court and that failure to make the disclosure is contrary to the public interest; to cooperate with law enforcement, health, welfare, and other agencies or to further the welfare of a patient; and to carry out the statutory provisions for involuntary commitment proceedings).

3. Intentional Infliction of Emotional Distress
In granting summary judgment in favor of Respondent, Judge McMahon found that the actions of Three Rivers could not be regarded as so extreme and outrageous to allow Appellant to recover for intentional infliction of emotional distress because Three Rivers did not participate in procuring the initial commitment order and the treatment of Appellant was conducted in a reasonable manner. Additionally, Judge McMahon held that Three Rivers was entitled to quasi-judicial immunity as it was treating Appellant pursuant to the involuntary commitment order.
In order to recover for intentional infliction of emotional distress, a plaintiff must establish the following:
(1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;
(2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"
(3) the actions of the defendant caused plaintiff's emotional distress; and
(4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."
Hansson v. Scalise Builders of S.C., 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007).
*476 We hold that Appellant could not, as a matter of law, maintain a claim for intentional infliction of emotional distress against Respondent as Respondent's conduct towards Appellant was reasonable and in accordance with the valid probate court orders. See Manley, 291 S.C. at 329-30, 353 S.E.2d at 314 (concluding mother, who was involuntarily committed to psychiatric facility, could not maintain cause of action for intentional infliction of emotional distress against former husband, two adult children, and psychiatrist, where defendants "acted in good faith and in a reasonable manner" regarding the involuntary commitment proceedings).

III. Conclusion
Because Appellant failed to timely and properly challenge the probate court's orders, they are presumed valid. Based on these valid orders, we find that Respondent's conduct toward Appellant was lawful, justified, and reasonable. Thus, Appellant cannot maintain causes of action for false imprisonment, defamation, or intentional infliction of emotional distress against Respondent. Accordingly, we affirm the decision of the circuit court granting summary judgment in favor of Respondent.
AFFIRMED.
TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.
NOTES
[1] On December 15, 2006, Respondent's wholly-owned subsidiary, Premier Behavioral Solutions, Inc., entered into a stock sale purchase of Three Rivers Healthcare Group, L.L.C., Three Rivers SPE Holding, L.L.C., and Three Rivers SPE Manager, Inc., L.L.C.
[2] S.C.Code Ann. § 44-17-410 (2002 & Supp.2010).
[3] S.C.Code Ann. § 44-17-430 (Supp.2010).
[4] Prior to this decision, a change of venue was made from Orangeburg County to Darlington County.
[5] S.C.Code Ann. § 44-17-550 (2002).
[6] S.C.Code Ann. § 44-17-580 (Supp.2010).
[7] Prior to the summary judgment hearing, Appellant agreed to dismiss her causes of action for public disclosure of a private fact and invasion of privacy. Judge McMahon also denied summary judgment as to Respondent's claim that it was not a proper party and its reliance on the doctrine of res judicata.
[8] Given the procedural history, Appellant's counsel conceded the validity of the initial commitment orders at oral argument before this Court.
[9] In an attempt to circumvent these procedural bars, Appellant claims the alleged procedural errors divested the probate court of subject matter jurisdiction. We find this claim to be meritless as any alleged procedural error would not affect the subject matter jurisdiction of the probate court as all of the proceedings involved involuntary commitment issues for which the probate court is statutorily authorized to adjudicate. See S.C.Code Ann. § 62-1-302(a)(6) (2009) ("To the full extent permitted by the Constitution, and except as otherwise specifically provided, the probate court has exclusive original jurisdiction over all subject matter related to the involuntary commitment of persons suffering from mental illness. . . ."); Boan v. Jacobs, 296 S.C. 419, 421, 373 S.E.2d 697, 698 (Ct.App.1988) ("The concept of jurisdiction refers to the authority of a court over a particular person (personal jurisdiction) or the authority of a court to entertain a particular action (subject matter jurisdiction), but the concept does not refer to the validity of the claim on which an action against a person is based.").