Gary G. HARRIS, Appellant,

v.

TIETEX INTERNATIONAL LTD., Respondent.

Appellate Case No. 2014–000902
Opinion No. 5418

Court of Appeals of South Carolina.

Submitted May 2, 2016
Filed June 29, 2016
Rehearing Denied September 23, 2016

534

Duane Alan Lazenby and Ginger D. Goforth, both of Lazenby Law Firm, LLC, of Spartanburg, for Appellant.

Fred W. Suggs, Jr. and Lucas James Asper, of Ogletree Deakins Nash Smoak & Stewart, PC, of Greenville, for Respondent.

SHORT, J.:

In this defamation case, Gary Harris appeals the trial court's grant of summary judgment in favor of Tietex International, Ltd. (Tietex), arguing the trial court erred in finding summary judgment was appropriate based on (1) a lack of genuine issue of material fact, (2) the statute of limitations, (3) res judicata, and (4) collateral estoppel. We affirm.

**FACTS**

In 1994, Tietex hired Harris as a senior research chemist. In 2006, Harris began to complain of having difficulty breathing and experiencing flu-like symptoms and headaches. Harris believed his health problems were being caused by mold present near his work area in Tietex's laboratory. Tietex had the laboratory tested; however, no mold was detected. A series of emails between Harris and his supervisor, Wade Wallace, indicate they discussed relocating Harris from the lab and allowing Harris to work in another area to protect him from the environment. Wallace explained to Harris that Tietex did not want to take any chances with his health and instructed Harris not to enter the lab under any circumstances.

On February 9, 2007, Wallace sent an email to his supervisor, Mark Isbell, and Human Resources Manager David Wilson, summarizing a conversation he allegedly had with Harris two days earlier. In the email, Wallace explained that Harris had expressed he was overwhelmed with personal problems and was "confused, disoriented, and could not function." However, according to Wallace, Harris eventually stated he could work through his problems and thanked Wallace for his support and patience.

On March 5, 2007, Wallace met with Harris to discuss several issues Harris needed to correct regarding his work performance. Following their meeting, Wallace sent a memo to Wilson, Isbell, and Harris, outlining the issues he and Harris discussed. On June 18, 2007, Wallace sent another memo to Wilson, Harris, and Isbell regarding Harris's work on two projects. Wallace explained Harris initiated the first project by convincing management he could develop a chemical compound that would result in cost savings for Tietex. However, according to Wallace, Harris had made no significant progress after working on the project for six months. Wallace claimed Harris "exercised poor judgement by making claims and commitments that he could not deliver." Wallace also criticized Harris's work on the second project, claiming Harris failed to conduct adequate scientific analysis. Wallace stated Harris's "negligence" was unacceptable for a senior research chemist.

On July 3, 2007, Wallace placed Harris on administrative suspension. On July 18, 2007, Wallace sent a final memo to Wilson and Isbell regarding Harris. Wallace claimed Harris had failed to correct all but one of the issues outlined in the March 5, 2007 memo and described several other problems he had had with Harris's work performance. Wallace explained he had lost confidence in Harris's ability to perform his job and recommended Tietex terminate Harris's employment. On July 19, 2007, Tietex terminated Harris's employment.

In August 2008, Harris filed a complaint in circuit court asserting causes of action against Tietex for retaliation and discrimination under the Age Discrimination in Employment Act[1] (ADEA), breach of contract, breach of contract accompanied by a fraudulent act, and defamation. Tietex removed the case to United States District Court.

At a deposition, Harris initially claimed the issues Wallace described in the March 5, 2007 memo regarding Harris were false; however, when questioned about each issue individually, Harris did not completely dispute each point. Harris also disputed some of the information contained in the June 18, 2007 memo and July 18, 2007 memo. Additionally, Harris characterized the portion of the June memo that described his work on the second project as "highly misleading as to what

---

1. 29 U.S.C. §§ 621–634 (2012 & Supp. II 2014).

really happened." Harris admitted he had no evidence that Tietex shared these memos with anyone other than the individuals to whom they were addressed.

On October 28, 2010, the district court granted summary judgment to Tietex on Harris's ADEA claims and dismissed Harris's state law claims, declining to exercise supplemental jurisdiction. The Fourth Circuit Court of Appeals affirmed the district court's judgment on May 31, 2011.

On October 21, 2011, Harris filed his complaint against Tietex in the instant case. Harris later filed an amended complaint, which included a cause of action for defamation. Harris's amended complaint did not identify the specific statements on which his defamation claim was based. At a deposition, Harris identified seven items related to his lawsuit that he believed were defamatory: (1) the February 9, 2007 email from Wallace to Wilson; (2) the March 5, 2007 memo; (3) the June 18, 2007 memo; (4) the July 18, 2007 memo; (5) "rumors in the industry" that he had been terminated for falsifying a test report; (6) Tietex suspending Harris; and (7) Tietex "banning" Harris from the laboratory. Harris admitted his defamation claim in the first action was not based on the February 9, 2007 email, the July 18, 2007 memo, Tietex banning him from the laboratory, or Tietex suspending him on July 3, 2007.

Tietex subsequently moved for summary judgment. On March 20, 2014, the trial court granted the motion. In its order, the trial court addressed Harris's defamation cause of action as seven separate claims based on the items Harris identified as defamatory at his deposition.[2] The trial court found Tietex was entitled to summary judgment as to Harris's defamation claims relating to the February 9, 2007 email and the three internal memos because these communications were substantially true. Furthermore, the trial court found the email and memos were subject to a qualified privilege because they were internal, performance-related communications.

---

2. At a hearing on the motion, Tietex addressed Harris's defamation cause of action as seven separate claims. Harris, however, stated his defamation cause of action was based on the three internal memos. In his brief to this court, Harris claims Tietex "twisted [his] deposition testimony to create 'additional' defamation claims."

The trial court also granted summary judgment as to Harris's defamation claims relating to (1) "rumors in the industry" regarding Harris's termination, (2) Tietex suspending Harris's employment, and (3) Tietex "banning" Harris from the laboratory. The trial court explained, "Given the ill-defined nature of the alleged defamatory statements and the lack of evidence to support these claims, Harris has failed to create a triable issue of fact."

Additionally, the trial court granted summary judgment to Tietex as to the following claims based on the claims being barred by the statute of limitations: (1) the February 9, 2007 email; (2) Tietex "banning" Harris from the laboratory; and (3) Tietex suspending Harris's employment. The trial court explained Harris did not assert these claims in his first action, and therefore, the limitations period was not tolled under 28 U.S.C. § 1367(d). The trial court also found Harris was precluded from asserting these claims under the doctrine of res judicata because they arose out of the same transaction or occurrence as Harris's claims in the first action. Finally, the trial court found Tietex was entitled to summary judgment on all of Harris's claims because he was precluded from arguing facts necessary to support his defamation claims under the doctrine of collateral estoppel based on the federal court's findings in the first action. This appeal followed.

**STANDARD OF REVIEW**

"When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Fleming*, 350 S.C. at 493–94, 567 S.E.2d at 860.

## I. GENUINE ISSUES OF MATERIAL FACT

Harris argues the trial court erred in granting summary judgment because genuine issues of material fact existed. Harris contends his testimony regarding the lack of veracity of the memos created a genuine issue of material fact and argues that even if a qualified privilege applies to the communications, a jury must determine if the privilege was abused. We disagree.

A party asserting a claim of defamation must prove the following elements: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." *Williams v. Lancaster Cty. Sch. Dist.*, 369 S.C. 293, 302–03, 631 S.E.2d 286, 292 (Ct. App. 2006). "The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Fleming*, 350 S.C. at 494, 567 S.E.2d at 860.

A defendant in a defamation action may assert the affirmative defense of conditional or qualified privilege. *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999). "Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Id.* The party asserting a qualified privilege must prove the following elements: (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. *Manley v. Manley*, 291 S.C. 325, 331, 353 S.E.2d 312, 315 (Ct. App. 1987). Whether an occasion gives rise to a qualified or conditional privilege is generally a question of law for the court. *Murray v. Holnam, Inc.*, 344 S.C. 129, 140, 542 S.E.2d 743, 749 (Ct. App. 2001). This court has previously found the qualified privilege applies "to situations in which an employee's job performance is properly evaluated." *Wright v. Sparrow*, 298 S.C. 469, 474, 381 S.E.2d 503, 506 (Ct. App. 1989).

■■■ "Where the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." *Swinton Creek Nursery*, 334 S.C. at 484, 514 S.E.2d at 134. "To prove actual malice, the plaintiff must show that the defendant was activated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious disregard for [the] plaintiff[']s rights." *Id.* at 485, 514 S.E.2d at 134. Although abuse of the conditional privilege is generally an issue for the jury to decide, in the absence of a controversy as to the facts, it is for the court to determine. *Woodward v. S.C. Farm Bureau Ins. Co.*, 277 S.C. 29, 32–33, 282 S.E.2d 599, 601 (1981). Similarly, if the plaintiff fails to present evidence of a genuine issue of fact as to actual malice and the qualified privilege is otherwise applicable, summary judgment may be granted. *See Wright*, 298 S.C. at 474, 381 S.E.2d at 507 (affirming the trial court's grant of summary judgment based on the qualified privilege applying to the alleged defamatory statements and the plaintiff failing to establish a genuine issue of material fact as to actual malice).

■■■ Initially, we note Harris has not identified the specific defamatory statements on which he bases his defamation claim or claims. In his brief, Harris simply asserts the three internal memos contained "malicious personal attacks outside any privilege impugning Harris's professional standards and abilities." The memos contain numerous statements regarding Harris and his work performance. Without Harris identifying the specific statement or statements on which he bases his claim, we cannot evaluate whether there existed a genuine issue of material fact as to the truth or defamatory nature of the statements. *See McBride v. Sch. Dist. of Greenville Cty.*, 389 S.C. 546, 562, 698 S.E.2d 845, 853 (Ct. App. 2010) (finding the plaintiff's description of alleged defamatory statements was too vague to be evaluated).

■■■ Furthermore, we affirm the trial court's decision granting summary judgment on the basis of a qualified privilege applying to any statements made in the three internal

memos.[3] These communications concerned the evaluation of an employee's job performance; therefore, the qualified privilege applies in the absence of evidence of actual malice or abuse of privilege. Harris fails to set forth an argument explaining what evidence he presented of actual malice or abuse of the qualified privilege in relation to these communications. Accordingly, we affirm the trial court's grant of summary judgment on the basis of the qualified privilege.

## II. STATUTE OF LIMITATIONS

Harris also argues the trial court erred in finding his defamation cause of action was barred by the statute of limitations because the limitations period was tolled while the first action was pending in federal court. We disagree.

In South Carolina, defamation claims are subject to a two-year statute of limitation. S.C. Code Ann. § 15–3–550 (2005). The limitations period begins when the alleged defamatory statement is made, not when the plaintiff learns of the statement. *See Jones v. City of Folly Beach*, 326 S.C. 360, 369, 483 S.E.2d 770, 775 (Ct. App. 1997) (affirming the trial court's grant of summary judgment as to the plaintiff's defamation claim because South Carolina has not adopted the discovery rule in libel or slander cases). The limitations period for any claim asserted under a federal court's supplemental jurisdiction is "tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d) (2012).

The trial court found Harris's defamation claims relating to (1) the February 9, 2007 email, (2) Tietex suspending Harris's employment, and (3) Tietex "banning" Harris from the laboratory were barred by the statute of limitations because Harris admitted his defamation claim in the first action was not based on these "statements."[4] Accordingly, the trial

---

3. The trial court also found the qualified privilege applied to the February 9, 2007 email. Harris does not challenge this finding on appeal.

4. The trial court correctly noted in its order that Tietex instructing Harris not to enter the laboratory was not a statement about Harris but merely a work directive; therefore, it could not form the basis of a

court found the limitations period for these claims was not tolled by the first action. We agree with the trial court's analysis.

Furthermore, we note that although Harris's complaint in the first action did not identify the specific statements on which his defamation claim was based, Harris did allege the defamatory statements had been made "*since his termination.*" The three defamation claims the trial court found to be barred by the statute of limitations were based on statements or acts that occurred prior to Harris's termination. Accordingly, Harris's defamation claim in the first action was obviously not based on these "statements," and the limitations period for a claim based on these "statements" was not tolled by the first action.

Additionally, although not ruled upon by the trial court, a review of the record shows that any claim based on statements contained in the memos is also barred by the statute of limitations for this same reason. Harris filed his original complaint in the current action on October 21, 2011, a date later than two years after the three internal memos were written and sent. Because Harris's defamation claims based on the memos were not tolled by the first action, those claims are barred by the statute of limitations. *See* § 15–3–550 (providing that the statute of limitations for actions for libel and slander is two years).

### III. REMAINING ISSUES

In light of our finding that the trial court properly granted summary judgment based on the qualified privilege and the statute of limitations, we decline to address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address other issues raised by the appellant

---

defamation claim. The trial court also correctly noted the only statements related to Harris's suspension were (1) Wallace's statement to Harris informing him of his suspension, which could not support a defamation claim because there was no publication to a third party, and (2) an allegation Wallace informed an individual at another company of Harris's suspension, which Harris had only provided inadmissible hearsay evidence of, and, even if Wallace made the statement, it could not form the basis of a defamation claim because the statement was true.

544

because resolution of a prior issue was dispositive of the appeal).

## CONCLUSION

For the foregoing reasons, the trial court's grant of summary judgment is

**AFFIRMED.**

THOMAS, J., and CURETON, A.J., concur.