799 S.E.2d 73

Martha Lewin **ARGOE**, Appellant,

v.

**THREE RIVERS BEHAVIORAL HEALTH, LLC** and Psychiatric Solutions, Inc., its successor; Phyllis Bryant-Mobley, MD; David A. Steiner, MD; Cheryl C. Dodds, MD; Doris Ann Burrell, RN and the Carolina Care Plan, Respondents.

**Appellate Case No. 2014-001511**
**Opinion No. 5478**

Court of Appeals of South Carolina.

Heard November 3, 2016
Filed April 5, 2017

Robert Daniel Dodson, of Law Offices of Robert Dodson, PA, of Columbia, for Appellant.

William H. Davidson, II and Andrew F. Lindemann, both of Davidson & Lindemann, PA, of Columbia, for Respondent Phillis Bryant-Mobley, MD.

James E. Parham, Jr., of James E. Parham, Jr., PA, of Irmo; and Sarah Patrick Spruill, Kenneth Norman Shaw, and J. Ben Alexander, all of Haynsworth Sinkler Boyd, PA, of Greenville, for Respondent Cheryl C. Dodds, MD.

Mary Agnes Hood Craig and Elloree A. Ganes, both of Hood Law Firm, LLC, of Charleston; and Deborah Harrison Sheffield, of Charleston, for Respondent David A. Steiner, MD.

Andrew N. Cole and Christian Stegmaier, both of Collins & Lacy, PC, of Columbia, for Respondents Three Rivers Behavioral Health, LLC and Psychiatric Solutions, Inc., its successor, and Doris Ann Burrell, RN.

LOCKEMY, C.J.:

In this medical malpractice action, Martha Lewin Argoe asserts the circuit court erred in granting all respondents partial summary judgment. We affirm.

## FACTS

Our supreme court detailed the facts of this case in its decision in *Argoe v. Three Rivers Behavioral Health, LLC* (*Argoe II* ), 392 S.C. 462, 710 S.E.2d 67 (2011). Argoe's husband and son filed an application for Involuntary Emergency Hospitalization for Mental Illness with the Orangeburg County Probate Court on June 6, 2005. *Id.* at 466, 710 S.E.2d at 69. Argoe asserted her husband and son filed the application as part of a "plan and scheme to have [her] committed to an inpatient psychiatric facility so that [they] would eventually be able to have access to her money, bank accounts and other material assets and could convert those things for [their] own use and benefit."

The probate court in Orangeburg County issued an Order of Detention directing "[an] officer of the peace take [Argoe] into custody for a period of [time], during which detention said person shall be examined by a licensed physician." On June 7, 2005, the Orangeburg County Sheriff's Department detained Argoe and committed her to the care and custody of the Regional Medical Center of Orangeburg. She was initially examined by Dr. Glen Hooker. Dr. Hooker discharged Argoe with a diagnosis of "Altered Mental Status" with instructions to return the following day. *Id.*

The following day, Dr. Hooker completed the necessary paperwork for Argoe's emergency commitment. *Id.* at 466, 710 S.E.2d at 70. "Dr. Hooker certified that inpatient psychiatric hospitalization was medically necessary for [Argoe] and identified Aurora Pavilion Behavioral Health Services (Aurora) . . . as the facility that would accept [Argoe] for further treatment." *Id.* at 466-67, 710 S.E.2d at 70. When she arrived at Aurora at 5:45 P.M. on June 8, 2005, Dr. David Steiner performed a second evaluation of Argoe's mental condition.

On June 9, 2005, Argoe's insurance provider caused her to be transferred to Three Rivers Behavioral Health. Dr. Phyllis Bryant-Mobley performed Argoe's initial evaluation at Three Rivers. "Based on her initial psychiatric evaluation . . . a provisional diagnosis was made that [Argoe] was suffering from bipolar disorder with manic and psychotic features." *Id.* at 467, 710 S.E.2d at 70.

On June 13, 2005, the probate court issued an Order for Continued Hospitalization. *Id.* The probate court also appointed Dr. Bryant-Mobley and Doris Ann Burwell, a registered nurse, to act as Argoe's designated examiners and directed them to present their findings at a hearing on June 21, 2005. *Id.* The probate court notified Argoe of the scheduled hearing and appointed her an attorney. *Id.*

On June 21, 2005, Dr. Bryant-Mobley and Nurse Burwell presented their findings to the probate court. *Id.* Argoe and her attorney participated in the hearing. *Id.* That day, the probate court issued an order finding that Argoe was "mentally ill." The probate court ordered that Argoe, "be committed to a state mental health facility for in-patient care and treatment as provided in [s]ection 44-17-580 [of the South Carolina Code], and following this, [t]hat said person undergo an outpatient treatment program at Orangeburg County mental health facility for a period not to exceed 12 months."

"[Dr.] Bryant-Mobley provided care and treatment to Ms. Argoe at Three Rivers until June 27, 2005, when ... Dr. Cheryl Dodds assumed Ms. Argoe's care" after Dr. Bryant-Mobley left for vacation. On July 8, 2005, the probate court appointed Dr. Dodds to examine Argoe to determine whether she needed a guardian or conservator. *Id.* at 468, 710 S.E.2d at 70. On July 20, 2005, Dr. Dodds discharged Argoe into the care of her son after she "consent[ed] to voluntarily take her prescribed medication."

On June 13, 2007, Argoe filed suit against her husband and her son "as well as the hospitals, physicians, and nurses involved in the involuntary commitment proceedings." *Id.* Argoe asserted causes of action against Three Rivers for intentional infliction of emotional distress, false imprisonment, conspiracy, defamation, invasion of privacy, and public disclosure of a private fact. *Id.* The circuit court granted Three Rivers summary judgment, Argoe appealed, and our supreme court certified the appeal. *Id.* at 469, 710 S.E.2d at 71.

The supreme court found Argoe's arguments against Three Rivers were based upon two theories: (1) the June 13, 2005 and June 21, 2005 orders were invalid because they were based on the June 6, 2005 order that was void and (2) there was no factual basis to substantiate the findings in the June

21, 2005 order. *Id.* at 469-70, 710 S.E.2d at 71. The supreme court found Argoe was procedurally barred from challenging the validity of the probate court orders because her petition to vacate the commitment proceedings was filed outside the statutory time period. *Id.* at 470, 710 S.E.2d at 71.[1] "Accordingly ... [Argoe] was precluded from collaterally attacking the underlying commitment orders." *Id.* at 471, 710 S.E.2d at 72.

The court also found Argoe's arguments were precluded by the doctrine of res judicata because she failed to appeal the probate and circuit court orders finding the commitment orders were valid. *Id.* The court held, "Because [the circuit court's] order constitutes a final adjudication regarding the validity of the commitment proceedings, the doctrine of res judicata precludes [Argoe] from asserting any challenge to the commitment orders." *Id.*

Finally, the court found there was a sufficient evidentiary basis for the probate court's findings. *Id.* at 471-72, 710 S.E.2d at 72-73. Based on the valid underlying probate court orders, the supreme court affirmed the circuit court's order granting Three Rivers summary judgment and remanded the case to the circuit court for further proceedings. *Id.* at 476, 710 S.E.2d at 75.

After remand, Argoe amended her complaint to allege a single cause of action for medical negligence. She asserted Respondents owed her a duty of care when they examined and treated her. By failing to properly examine and treat her, Argoe argued Respondents caused her damages including "an extended period of involuntary commitment and hospitalization against her will, the administration of drugs and medications against her ill, mental anguish and anxiety as a result of her involuntary commitment, [and] lost wages...." The circuit court, in separate orders, granted partial summary judgment to all Respondents. This appeal followed.

**STANDARD OF REVIEW**

"When reviewing an order granting summary judgment, the appellate court applies the same standard as the trial court."

---

1. The probate court found the petition to vacate was filed outside the statutory time period, and the circuit court affirmed the probate court's decision.

*David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). "Summary judgment is appropriate when there is no genuine issue of material fact such that the moving must prevail as a matter of law." *Id.* "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Id.*

## LAW/ANALYSIS

Argoe asserts the circuit court erred in granting Respondents summary judgment based upon the doctrines of res judicata and law of the case because she has never litigated medical malpractice claims against Respondents. We disagree.

 "The doctrine of the law of the case prohibits issues which have been decided in a prior appeal from being relitigated in the trial court in the same case." *Ross v. Med. Univ. of S.C.*, 328 S.C. 51, 62, 492 S.E.2d 62, 68 (1997). "The law of the case applies both to those issues explicitly decided and to those issues which were necessarily decided in the former case." *Id.* "Matters decided by the appellate court cannot be reheard, reconsidered, or relitigated in the trial court, even under the guise of a different form." *Ackerman v. McMillan*, 324 S.C. 440, 443, 477 S.E.2d 267, 268 (Ct. App. 1996).

In Argoe's initial complaint filed in 2007, she asserted Respondents were liable for false imprisonment. Argoe claimed

48. The conduct of all [Respondents], combining and concurring, caused [her] to be restrained and confined without her consent and with the intent that she be imprisoned.

49. Even based on the false and unbased affidavits and medical records prepared by or on behalf of [Respondents], [her] alleged conduct and purported symptoms did not rise to the level necessary to justify involuntarily restraining her personal liberty and freedom.

50. As a result of the foregoing actions, [she] was held and restrained by [Respondents] without just and legal cause for 43 days between June 8 and July 20, 2005, and thereafter.

Psychiatric Solutions, a previous defendant and the prior owner of Three Rivers, argued it could not be liable for false imprisonment because it retained custody of Argoe pursuant to a lawful order of the probate court. The circuit court agreed and granted Psychiatric Solutions summary judgment. Our supreme court affirmed. *Argoe II*, 392 S.C. at 472-73, 710 S.E.2d at 73. The court determined, "[Argoe] was lawfully taken into custody and detained pursuant to valid probate court orders." *Id.* at 473, 710 S.E.2d at 73. Accordingly, the court found Argoe could not establish she was unlawfully restrained by Psychiatric Solutions and summary judgment was proper. *Id.*

After the court's decision in *Argoe II*, Argoe sought leave from the circuit court to amend her complaint. Argoe did not advance her false imprisonment claim against the remaining defendants; rather, the only remaining allegation was that she was injured as a result of medical malpractice. Specifically, Argoe asserted Respondents breached their duty of care

a. In failing to properly, completely and thoroughly evaluate [her] to determine if she was a danger to herself or others;

b. In continuing to commit [her] for involuntary inpatient psychiatric treatment when [she] was neither a threat to herself or others and her medical condition did not warrant such forced, involuntary, inpatient treatment;

c. In failing to timely and appropriately recognize that [she] was not a threat to herself or others and did not need to be involuntarily committed;

d. In failing to reasonably investigate the allegations that were made against [her] by her now ex-husband and son regarding her condition;

e. In failing to conduct a reasonable and prudent examination as reasonable and prudent psychiatrists, psychiatric nurses and psychiatric medical professionals would under like or similar circumstances;

f. In failing to appropriately treat and care for [her];

g. In failing to recognize and diagnose that [she] was not a threat to herself or others; . . . .

i. In committing medical assault on [her] by putting her in reasonable fear of being forced to take mind-altering medication and drugs that were not medically necessary or medically warranted given [her] condition;

j. In committing medical battery on [her] by in fact forcing her to take mind-altering medication and drugs that were not medically necessary or medically warranted given [her] condition; and

k. In such additional particulars as may be learned through discovery and/or proven at trial.

Respondents answered Argoe's second complaint and alleged res judicata and collateral estoppel as affirmative defenses. Respondents then filed motions for summary judgment, asserting the decision in *Argoe II* precluded Argoe from advancing her medical malpractice claims.

The circuit court found Dr. Steiner's motion for summary judgment should be granted based upon res judicata, law of the case, and the absence of a genuine issue of material fact as to the medical negligence claim. The circuit court found it

[was] not able to reconcile the rulings of the [s]upreme [c]ourt in *Argoe II* with the assertions that the involuntary commitment and treatment of Ms. Argoe by Dr. Steiner constituted medical malpractice. [The] court accept[ed] the argument of [Dr. Steiner] that he [was] entitled to a determination that it is res judicata and the law of this case that the commitment process was 'lawful, justified, and reasonable.' "

The circuit court explained that, "[t]he [s]upreme [c]ourt ruled in *Argoe II* that '[Ms. Argoe] is procedurally barred from challenging the validity of the underlying orders,' including and expressly noting the June 21, 2005, continued commitment order." "Furthermore, [Ms. Argoe] is precluded from collaterally attacking the underlying commitment orders." "These findings by the [s]upreme [c]ourt are the established law of the case."

The circuit court found, "Dr. Steiner was legally obligated to perform the initial assessment of [Argoe] pursuant to the [p]robate [c]ourt's [o]rder." The circuit court further found, "It has been judicially determined that Ms. Argoe's commitment

through June 21, 2005 was valid. Dr. Steniner's association with Ms. Argoe ended long before June 21."

The circuit court also granted partial summary judgment to Three Rivers, Dr. Bryant-Mobley, and Dr. Dodds based upon res judicata, the law of the case doctrine, and quasi-judicial immunity for any acts or omissions that occurred before June 21, 2005, or after July 20, 2005. Specifically, the circuit court found,

> This court is not able to reconcile the rulings of the [s]upreme [c]ourt in *Argoe II* with the assertions that the involuntary commitment of Ms. Argoe constituted medical malpractice. This court accepts the argument of the remaining three defendants that they are entitled to a determination that it is res judicata and the law of this case that the commitment process was "lawful, justified, and reasonable."

Accordingly, the circuit court granted Three Rivers, Dr. Bryant-Mobley, and Dr. Dodds partial summary judgment but denied the motion "regarding the time period of Ms. Argoe's continued in-patient commitment from June 22, 2005 to July 20, 2005."

Finally, the circuit court granted Nurse Burrell summary judgment based upon the law of the case and quasi-judicial immunity. The circuit court found, "Based on the rulings already issued by the [s]upreme [c]ourt in *Argoe II*, Ms. Argoe cannot now attempt to collaterally attack the underlying commitment orders. Since Nurse Burrell was at all times acting under the authority of and during the pendency of the [p]robate [c]ourt proceedings, she is entitled to quasi-judicial immunity." Furthermore, the circuit court found, "The [s]upreme [c]ourt has already determined there was a substantial basis for the continued involuntary, in-patient treatment of [Argoe]."

■ Thus, to the extent Argoe seeks to challenge Respondent's actions leading to her continued treatment at Three Rivers, our supreme court's decision in *Argoe II* precludes her medical negligence claims. Argoe does not specifically allege she received improper or negligent care while at Three Rivers; rather, Argoe's assertions were based upon the theory that she should not have been held at Three Rivers. These are the same factual issues she asserted in her false imprisonment

claim against Psychiatric Solutions. The court in *Argoe II* explicitly found "[Argoe] was lawfully taken into custody and detained pursuant to valid probate court orders." *Id.* at 473, 710 S.E.2d at 73. That factual ruling is the law of this case and cannot be challenged, even under a new cause of action. *See Ackerman*, 324 S.C. at 443, 477 S.E.2d at 268 ("Matters decided by the appellate court cannot be reheard, reconsidered, or relitigated in the trial court, even under the guise of a different form."). Because the specific medical negligence claim Argoe asserted to the circuit court is based upon the medical professionals' failure to discharge her from psychiatric care, we find the circuit court properly granted Respondents' motion for partial summary judgment based upon the law of the case doctrine.

## CONCLUSION

For the foregoing reasons, the circuit court's decision is

**AFFIRMED.**

KONDUROS and MCDONALD, JJ., concur.